UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE AGAVE PROJECT LLC, d/b/a THORNTAIL, and JOEL VANDENBRINK, individual,<br><br>Plaintiffs,<br><br>v.<br><br>HOST MASTER 1337 SERVICES LLC, a ST. KITTS and NEVIS company, and a DOE,<br><br>Defendants. | CASE NO. 2:23-cv-1984<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

Plaintiffs The Agave Project LLC, d/b/a Thorntail Hard Agave ("Thorntail") and Joel VandenBrink filed a lawsuit on December 22, 2023, to "stop Defendants, Host Master 1337 LLC and a Doe, from cybersquatting on the domain 'thorntailhardavage.com' and using this domain, as well as mirror websites, to publish false, defamatory, and disparaging content about Thorntail and Vande[n]Brink with the intent to interfere with Plaintiff's business." Dkt. No. 1 at 1.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 1

Plaintiffs move for a temporary restraining order to block Defendants from using the thorntailhardagave.com domain or publishing defamatory content about Plaintiffs. They also request leave to serve Defendants by mail and email and to conduct expedited discovery. For the reasons explained below, the Court GRANTS in part the motion.

## 1. BACKGROUND

According to the complaint, Thorntail is an alcohol beverage company that VandenBrink incorporated in March 2023. Dkt. No. 1 at 3. Plaintiffs allege that as early as March 2023, they secured trademark rights in the "Thorntail Hard Agave" mark by offering for sale, securing an agreement for distribution of, and continuing to market and promote their products under the Thorntail Hard Agave brand. *Id.* at 3-5.

Plaintiffs claim that between May and August 2023, Defendant Doe created and registered the domains "thorntailhardagave.com," "anonimcard.com," and "kompletedesignbuild.com" ("Subject Websites") to display various inflammatory and false statements and images about Plaintiffs. *Id.* at 4-5. To hide his identity, Doe used Defendant Host Master 1337 LLC as an intermediary to register the domains through Tucows, which according to Plaintiffs has a history of refusing to comply with valid "takedown" requests from trademark holders. *Id.* at 6.

In November 2023, Plaintiffs tried to gain control of the thorntailhardagave.com domain through the World Intellectual Property Organization's Uniform Domain-Name Dispute-Resolution Policy ("UDRP") arbitration process. *Id.* at 7. Plaintiffs named Host Master 1337 as the registrant of

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 2

the domain, but Host Master 1337 never responded to Plaintiffs' UDRP complaint. *Id.* Through the UDRP process, Plaintiffs learned that Host Master 1337 provided only a P.O. Box and email address, and not a physical address, when it registered the domains of the Subject Websites with Tucows. Dkt. No. 3 at 1-2. On December 12, 2023, an arbitrator denied Plaintiffs' request to transfer the domain based on his finding Thorntail had not acquired secondary meaning. Dkt. No. 1 at 7.

Plaintiffs now move for a temporary restraining order to enjoin operation of the Subject Websites. Since filing their motion, however, Plaintiffs report that the Subject Websites have been "taken down." Dkt. No. 9 at 1-2. Even so, Plaintiffs maintain their request for preliminary relief. *Id.* Plaintiffs also seek expedited discovery from third parties to determine Doe's identity and leave to serve Defendants through alternative service.

## 2. DISCUSSION

### 2.1 Legal Standard.

A Temporary Restraining Order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The standard for issuing a TRO is the same as that of a preliminary injunction—the moving party must demonstrate "[(1)] 'that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009)

(quoting *Winter*, 555 U.S. at 20). All four elements must be present, although a "stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

**2.2    Plaintiffs have not shown that a TRO should issue.**

Plaintiffs' motion focuses mostly on the strength of their claims against Defendants, but they cannot evade the requirements of Rule 65 by arguing the merits of their claim. Plaintiffs fail to demonstrate that they will suffer "irreparable harm" without preliminary relief, which defeats their quest for a TRO.

The primary injuries that Plaintiffs allege are a "significant loss of prospective customers, partnering business, goodwill, and business reputation." Dkt. No. 2 at 20. But apart from quoting a "potential strategic partner" as refusing to partner with Plaintiffs on a business deal unless the thorntailhardagave.com domain is taken down, Dkt. No. 4 at 1-2, Plaintiffs do not offer any evidence of actual or imminent loss to their business or reputation.

The Subject Websites have been taken down, removing them as a present threat. And while the loss of goodwill and reputation are important considerations in gauging irreparable harm, Plaintiffs' conclusory and speculative statements about the possibility of loss if the websites are reactivated do not count as a "clear showing" that they are entitled to relief. *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 4

remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Moreover, some of the threatened harms Plaintiffs identified are not necessarily irreparable, as lost business agreements and customers may be addressed through an award of money damages. *See Idaho v. Coeur d'Alene Tribe,* 794 F.3d 1039, 1046 (9th Cir. 2015) ("Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation.").

Finally, Plaintiffs' claims about the threat of injury are undercut by the simple passage of time, as the Subject Websites were live for over six months before Plaintiffs sought relief. *See Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").

Because the Subject Websites have been taken down and the threat of future injury is speculative for now, the Court cannot find that Plaintiffs will *likely* suffer irreparable harm without an immediate injunction. *Stormans, Inc.*, 586 F.3d at 1127 ("The proper legal standard for preliminary injunctive relief requires a party to demonstrate … that he is likely to suffer irreparable harm in the absence of preliminary relief…."). Given that Plaintiffs have failed to clearly show a likelihood of irreparable harm, which is perhaps "the single most important prerequisite for the issuance of a preliminary injunction," the Court need not analyze the remaining

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 5

perquisites to granting preliminary relief. *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005); *see Winter,* 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.").

Accordingly, Plaintiffs' motion for a temporary restraining order is DENIED.

**2.3  Good cause is found to conduct expedited discovery.**

Plaintiffs also seek leave to conduct limited expedited discovery to learn the identity of Doe and the operator of the Subject Websites. Specifically, Plaintiffs propose subpoenaing "1) the domain registrars for websites thorntailhardagave.com, anonimcard.com (Tucows Domains Inc.), and kompletedesignbuild.com (Whois Privacy Corp.); (2) website hosts for kompletedesignbuild.com (Cloudflare Inc.); and (3) back-end service providers, web designers, or other service providers that may be identified as a result of discovery directed at domain registrars and website hosting services." Dkt. No. 2 at 23.

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted for "[g]ood cause … where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

Plaintiffs have shown good cause to conduct limited early discovery to identify Doe. Courts routinely allow early discovery solely to identify "Doe"

defendants on whom process could not otherwise be served. *See, e.g., Music Grp. Macao Com. Offshore Ltd. v. John Does I-IX*, No. 14-CV-621 RSM, 2014 WL 11010724, at *1–2 (W.D. Wash. July 18, 2014) (granting expedited discovery from Twitter, Inc. sufficient to identify Doe defendants). So Plaintiffs' stated purpose in seeking the subpoenas justifies their request.

The Court finds that no prejudice to Defendants will result if Plaintiffs are given leave to conduct expedited discovery. Plaintiffs' request is narrowly tailored to seek information only from those domain registrars, website hosts, and back-end service providers associated with Defendants. Furthermore, Plaintiffs' proposed discovery is directed to non-parties—not the Defendants—which courts recognize as "not imposing a significant burden upon defendants." *Amazon.com, Inc. v. Yong*, No. 21-170RSM, 2021 WL 1237863, at *3 (W.D. Wash. Apr. 2, 2021) (internal quotation marks omitted).

Thus, the Court GRANTS Plaintiffs' motion for limited expedited discovery to subpoena records related to the Doe Defendant.

**2.4  Alternative service of process is appropriate for Defendant Host Master 1337, but not the Doe Defendant.**

Plaintiffs seek an order permitting service by email address and P.O. Box on Defendants. To start, Plaintiffs ask the Court to treat Host Master 1337 as Doe's registered agent for the purpose of service. But Doe's identity, location, and relationship to Host Master 1337, if any, are all unknown, so the Court cannot determine whether or how Doe can properly be served, including whether Doe may be served through Host Master 1337. Thus, the Court DENIES Plaintiffs' motion to

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 7

serve Doe through alternative means. As explained above, however, the Court has granted Plaintiffs leave to conduct expedited third-party discovery to discern the identity of Doe; Plaintiffs may renew their motion for alternative service if more is learned about Doe's identity.

Next, Plaintiffs request leave to serve Host Master 1337 by mail at a P.O. Box in Saint Kitts and Nevis and via email. Plaintiffs obtained this contact information through the UDRP process, but they could not identify a physical address for Host Master 1337.

A foreign corporation may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f)(1) provides for service "by an internationally agreed means of service. . . such as those authorized by the Hague Convention." And Rule 4(f)(2) provides that "if there is no internationally agreed means, or if an international agreement allows but does not specify other means" then service can happen by a "method that is reasonably calculated to give notice." Lastly, Rule 4(f)(3) allows for "service by other means not prohibited by international agreement, as the court orders."

Host Master 1337's P.O. Box is in Saint Kitts and Nevis. Plaintiffs argue that the dual-island nation is a party to the Hague Convention, but it is not listed as a current signatory to the Hague Convention on the Service Abroad of Judicial and

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 8

Extrajudicial Documents.[1] *See* Contracting Parties and Signatories to Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited December 29, 2023); *see also TEMPO Networks LLC v. Gov't of NIA,* No. CIV. 2:14-6334 WJM, 2015 WL 4757911, at *5 (D.N.J. Aug. 12, 2015) ("[B]ecause Nevis and St. Kitts are not listed as current members or signatories of the Hague Convention, the Hague Convention does not apply."). This forecloses service under Rule 4(f)(1), but not under subsection (f)(3).

Under Rule 4(f)(3), "trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). Regardless of the method, service "must also comport with constitutional notions of due process." *Id*. That is, the "method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Court could find no international agreement expressly prohibiting Plaintiffs' proposed methods of service.

---

[1] Plaintiffs cite an electronic bulletin from the U.S. Citizen and Immigration Services, announcing that Saint Kitts and Nevis has recently entered the Hague Adoption Convention, but the Adoption Convention does not discuss service abroad.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 9

Plaintiffs do not have a valid physical address at which to serve Host Master 1337, but they have shown that Host Master 1337 "has structured its business such that it could only be contacted via its email address" and P.O. Box. *Bright Sols. For Dyslexia, Inc. v. Lee,* No. 15-CV-01618-JSC, 2017 WL 10398818, at *7 (N.D. Cal. Dec. 20, 2017), report and recommendation adopted, No. 15-CV-01618-CW, 2018 WL 4927702 (N.D. Cal. Mar. 26, 2018). Plaintiffs emailed Defendants copies of the complaint and their motion papers seeking a TRO, and the Subject Websites were taken down the next day. *See* Dkt. Nos. 7, 9. The Court agrees with Plaintiffs that the most reasonable inference from this action is that Defendants have actual notice of this lawsuit and are monitoring the email account.

Under similar circumstances, courts have held that service via email and international mail are valid methods of service under Rule 4(f)(3). *See, e.g., Rio Properties, Inc.*, 284 F.3d at 1018 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process."); *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004) (holding service of process by international mail is permitted by the Hague Convention); *Amazon.com Inc. v. Bamb Awns*, No. C22-402-MLP, 2023 WL 2837076, at *3 (W.D. Wash. Apr. 7, 2023) (authorizing service by email to defendants located abroad).

Plaintiffs have identified an email address and P.O. Box that Host Master 1337 registered in connection with its business and that the email address remains active. Viewed as a whole, the Court finds sufficient indicia that Host Master 1337 is likely to receive notice if served by email and international mail. Service in this

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 10

way is reasonably calculated under all the circumstances to apprise Host Master 1337 of the pendency of this action and to give it a chance to defend its interests. *See Rio Properties, Inc.*, 284 F.3d at 1016-17.

### 3. CONCLUSION

In sum, the Court rules as follows:

3.1. The Court DENIES Plaintiffs' motion for a temporary restraining order.

3.2. The Court also DENIES Plaintiffs' request for the Court to require Defendants to show cause why a preliminary injunction should not issue.

3.3. The Court GRANTS Plaintiffs' motion for expedited discovery. Plaintiffs are granted leave to serve Rule 45 subpoenas on the entities and individuals below solely to gather account information that will help identify the Doe Defendant:

- the domain registrars for websites thorntailhardagave.com, anonimcard.com (Tucows Domains Inc.), and kompletedesignbuild.com (Whois Privacy Corp.);
- website hosts for kompletedesignbuild.com (Cloudflare Inc.); and
- back-end service providers, web designers, or other service providers that may be identified as a result of discovery directed at domain registrars and website hosting services.
- Plaintiffs must provide a copy of this order with each subpoena issued.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 11

3.4. The Court GRANTS, in part, Plaintiffs' motion for alternative service. Plaintiffs may serve Host Master 1337 via email at thorntailhardagave.com@njal.la and at the P.O. Box identified in the UDRP proceedings.

Dated this 29th day of December, 2023.

Jamal N. Whitehead
United States District Judge