1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

THE AGAVE PROJECT LLC and
JOEL VANDERBRINK,

CASE NO. 2:23-cv-1984

ORDER ON DEFAULT JUDGMENT

9

Plaintiffs,

10

v.

11

HOST MASTER 1337 SERVICES LLC
and DOE,

12
13

Defendant.

14

## 1. INTRODUCTION

15

Plaintiffs' Motion for Default Judgment is before the Court. Dkt. No. 21. After

16

considering the briefing, the record, and the relevant law, the Court is fully

17

informed. For the reasons stated below, the Court finds that default judgment is

18

inappropriate. Accordingly, the Court denies the motion with leave to renew.

19
20
21
22
23

## 2. BACKGROUND[1]

Plaintiff The Agave Project is a Washington corporation owned by Plaintiff Joel VandenBrink, a Seattle resident. Dkt. No. 1 at 2. The Agave Project does business in Washington under the name "Thorntail." *Id.* at 3. In 2023, VandenBrink incorporated Thorntail, which he describes as an "alcohol beverage company." *Id.* "Thorntail has developed a hard cider fermented agave beverage and the related brand THORNTAIL HARD AGAVE." *Id.*

Thorntail maintains the website "drinkthorntail.com," which markets its Thorntail Hard Agave products. *Id.* at 4. Thorntail has delivered samples of its hard cider under the brand name "Thorntail Hard Agave" and has contracted with Columbia Distributing in Kent, Washington for the sale and distribution of its hard cider under that brand name. *Id.* at 3.

In 2023, Defendant Doe registered "thorntailhardagave.com" to post "inflammatory and false statements and images . . . to cause harm to Thorntail and VandenBrink by interfering with Plaintiffs' relationships in the alcoholic-beverage industry and harming Plaintiffs' reputation." *Id.* at 5. The complaint lists specific, harmful comments that were posted to the website. *See id.* at 5–6.

Plaintiffs have struggled to learn the identity of the Doe Defendant. *See id.* at 6–7. In an attempt to learn Doe's identity, Plaintiffs filed an action with the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center. *Id.*

---

[1] As default has been entered against Defendant Host Master 1337 Services LLC, the Court considers the well-pleaded factual allegations in the complaint to be admitted by that Defendant and recites the relevant allegations.

1    at 7. Eventually, Plaintiffs learned that Doe used an intermediary—Defendant Host

2    Master 1337 LLC ("Host Master")—to register the domain name through a

3    Canadian registrar called Tucows. *See id*. at 6–7. Host Master is based in St. Kitts

4    and Nevis, and it controls the domain name, "thorntailhardagave.com." *Id*. at 7.

5        On November 10, 2023, Thorntail and VandenBrink initiated an arbitration

6    under the Uniform Domain Name Dispute Resolution Policy ("UDRP"), seeking

7    transfer of the domain. *Id*. at 7. Host Master did not respond or appear. *Id*. The

8    UDRP arbitrator denied Thorntail and VandenBrink's request to transfer the

9    domain. *Id*.

10       Afterward, Thorntail and VandenBrink filed this lawsuit and requested

11   authorization for alternate service. *See* Dkt. No. 2. The Court granted the request in

12   part, permitting alternative service on Host Master via email and P.O. Box delivery.

13   Dkt. No. 11 at 7–11.

14       On January 5, 2024, Thorntail and VandenBrink gave notice to the Court that

15   they had served a summons and a copy of the complaint to Host Master's P.O. box

16   on January 3. Dkt. No. 16 at 1–2. The notice also stated that Thorntail and

17   VandenBrink sent the summons but not the complaint to Host Master's email on

18   January 3. Dkt. No 16 at 1–2. However, delivery of the summons and the complaint

19   to the P.O. Box failed on January 23. Dkt. Non. 16 at 2. Following this failed

20   delivery, Thorntail and VandenBrink sent "an additional electronic service of the

21   [s]ummons and [c]omplaint to" the approved email address in the Court's order on

22   March 21, 2024. Dkt. No. 16 at 2.

23

1    Host Master never answered the summons or the complaint, and default was

2    entered against Host Master on January 13, 2025. Dkt. No. 22.

### 3. DISCUSSION

3

4    Before entering default judgment, the district court must ensure that it has

5    subject-matter and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir.

6    1999) ("When entry of judgment is sought against a party who has failed to plead or

7    otherwise defend, a district court has an affirmative duty to look into its jurisdiction

8    over both the subject matter and the parties."). Similarly, district courts must also

9    ensure that the defaulting defendant received adequate service. *Liguore v.*

10   *Simmons,* No. 24-CV-01621-LB, 2024, WL 4112332, at *4 (N.D. Cal. Sept. 5, 2024);

11   *Rosco v. Advantage Grp.*, Case No: 2:15-CV-325-RMP, 2019 WL 845419, at *2 (Feb.

12   20, 2019).

### 3.1   The Court has subject-matter jurisdiction, and service was adequate.

13

14   The claims here arise under federal trademark law and the

15   Anticybersquatting Consumer Protection Act ("ACPA")—an amendment to the

16   Lanham Act. Because the claims arise under federal law, 28 U.S.C. § 1331 provides

17   the Court with subject-matter jurisdiction.

18   Turning to adequacy of service, the Court permitted alternative service on

19   Host Master under Rule 4(f)(3) in a prior Order. *See* Dkt. No. 11 at 10. The Court

20   finds that Plaintiffs served Host Master in compliance with that Order, *see* Dkt.

21   Nos. 16, 17, and thus that service was adequate, *see* Dkt. No. 11 at 10–12.

22

23

1

2    **3.2    The Court has personal jurisdiction under Rule 4(k)(2).**

3    The Court has personal jurisdiction over Host Master on the pertinent claims

4    under Federal Rule of Civil Procedure 4(k)(2). This rule is "not limited to the

5    contours of a state longarm statute." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,

6    485 F.3d 450, 461 (9th Cir. 2007). "Instead, a court may exercise jurisdiction when

7    three requirements are met": (1) the claim "must arise under federal law"; (2) "the

8    defendant must not be subject to the personal jurisdiction of any state court of

9    general jurisdiction"; and (3) exercising personal jurisdiction "must comport with

10   due process." *Id.*

11   **3.2.1    The first two factors of Rule 4(k)(2) are met.**

12   Plaintiffs' claims arise under federal law, so the first factor is met. Regarding

13   the second factor, Host Master is a foreign entity not subject to general jurisdiction

14   in any state court. Plaintiffs have properly pled that Host Master is a "St. Kitts and

15   Nevis Company," and the Court finds no basis to believe that Host Mater is subject

16   to another state's general jurisdiction. *See* Dkt. No. 1 at 2; *see also Talavera Hair*

17   *Prods. Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd.*, Case No.: 18-CV-823-JLS

18   (JLB), 2021 WL 3493094, at *9 (S.D. Cal. Aug. 6, 2021) (quoting *Holland Am. Line*

19   *Inc.*, 485 F.3d at 462) (explaining, "absent any statement from [any one of the

20   Defaulted Defendants] that it is subject to the courts of general jurisdiction in

21   another state, the second requirement of Rule 4(k)(2) is met")).

22

23

### 3.2.2     The third factor of Rule 4(k)(2) is met, as exercising personal jurisdiction comports with due process.

Turning to the third factor, when deciding whether exercising personal jurisdiction "comport[s] with due process," courts evaluate the defendant's contacts with the forum, as they would under a traditional personal jurisdiction analysis. *Holland Am. Line Inc.*, 485 F.3d at 462. The traditional personal jurisdiction analysis requires district courts to consider the defendant's contacts with the forum: "[f]or due process to be satisfied, a defendant . . . must have 'minimum contacts' with the forum  . . . such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Cady*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

But unlike the traditional minimum contacts test, when courts analyze minimum contacts under Rule 4(k)(2), the relevant forum is not a single state—it is the entire nation. *Holland Am. Line Inc.*, 485 F.3d at 462. Thus, the district court must "consider [the defendant's] contacts with the nation as a whole." *Id.* (citing *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723–24 (5th Cir. 1997) ("The due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States.")).

The defendant has minimum contacts with the relevant forum when:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum,

> (2) the claim arises out of or results from the defendant's forum-related activities, and

ORDER ON DEFAULT JUDGMENT - 6

1

2    (3) the exercise of jurisdiction is reasonable.

3  *Pebble Beach Co.*, 453 F.3d at 1155 (list reformatted); *see also Talavera Hair Prods.*

4  *Inc.*, 2021 WL 3493094, at *9 (quoting *Schwarzenegger v. Fred Martin Motor Co.*,

5  374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden of satisfying the

6  first two prongs of the 'minimum contacts' test," and if the plaintiff is successful, the

7  defendant must then establish why the court's exercise of jurisdiction is

8  unreasonable. *Pebble Beach Co.*, 453 F.3d at 1155.

9        The first prong of the minimum contacts test may be met when a defendant

10 has "purposefully directed" their activities toward the forum. *See id*. at 1155, 1156–

11 57. In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court provided a test for

12 establishing "purposeful direction"—the "*Calder* effects test." *Pebble Beach Co.*, 453

13 F.3d at 1156. "To satisfy this test, the defendant must have (1) committed an

14 intentional act, which was (2) expressly aimed at the forum state, and (3) caused

15 harm, the brunt of which is suffered and which the defendant knows is likely to be

16 suffered in the forum state." *Id*. (internal quotation and citation omitted).

17       Applying the *Calder* effects test, the Court finds that Host Master acted

18 intentionally by creating "thorntailhardagave.com" and using it to publish

19 information harmful to Plaintiffs. *See* Dkt. No. 1 at 5. The Court also finds that

20 Host Master's acts were "expressly aimed" at the forum to harm Plaintiffs who

21 reside and operate in the forum. Indeed, Thorntail is a Washington corporation with

22 its principal place of business in Seattle. Dkt. No. 1 at 1–2. It's owner, Plaintiff Joel

23 VandenBrink, lives in Seattle. *Id*. at 2. The factual allegations, which the Court

takes as true on this Motion for Default Judgment, show that Host Master specifically sought to harm VandenBrink's reputation—as well as the reputation of his business and product—through its actions. *See id*. at 5–6. In sum, the Court finds that the complaint's allegations demonstrate Host Master's purposeful direction; thus, the *Calder* effects test is met. Consequently, so is the first prong of the minimum contacts test.

The second prong of the minimum contacts test is easily met here, as Plaintiffs' claims are based on exactly the same conduct establishing purposeful direction. With the first two prongs met, the burden shifts to Host Master to prove that jurisdiction in this forum would deprive it of due process. *See Pebble Beach Co.*, 453 F.3d at 1155. But because Host Master has not appeared, it has failed to carry that burden. Thus, the Court finds that Host Master has minimum contacts with the forum such that the Court's exercise of personal jurisdiction comports with due process.

Accordingly, the third prong of Rule 4(k)(2) is met. As the Court has found all of Rule 4(k)(2)'s requirements satisfied, Rule 4(k)(2) provides the Court with personal jurisdiction over Host Master.

### 3.3    Considering the *Eitel* factors, default judgment is inappropriate.

Default judgment is a two-step process. *See* Fed. R. Civ. P. 55 (a), (b). After the Clerk of the Court enters default against a party who fails to respond, the court may exercise its discretion to order default judgment. *Id*.; *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). On entry of default, the well-pleaded allegations of

the complaint are deemed true, except for those concerning damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Notably, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

District courts in the Ninth Circuit may refer to the seven *Eitel* factors to decide whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Courts often find that the second and third *Eitel* factors are the most important ones and consider them together. *United States v. Taylor*, No. CV-23-00506-PHX-SMB, 2024 WL 4837021, at *2 (D. Ariz. Nov. 20, 2024) (quoting *Fed. Nat'l Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015)).

### 3.3.1    The second and third *Eitel* factors weigh heavily against default judgment.

As the Court's reasoning is based primarily on the second and third *Eitel* factors, the Court addresses those first. In short, Plaintiffs fail to establish that their complaint states viable claims. *See* Dkt. No. 21 at 6. Here, Plaintiffs did not argue the sufficiency of their complaint, nor did they explain their legal theories in their motion. *See generally* Dkt. No. 21. And contrary Plaintiffs' conclusory

1
2
3
4

assertion, the Court did not "already determine[] that Plaintiff has claims plausible on their face" in a previous Order. *See* Dkt. No. 21 at 6; *see also* Dkt. No. 11. at 5–6 (prior Order explaining that the Court had no need to analyze likelihood of success on Plaintiffs' claims).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Beginning with Plaintiffs' trademark infringement claim, the Court finds that the second and third *Eitel* factors weigh against default judgment. "Trademarks . . . are protected under the Lanham Act, and under the common law, to protect business goodwill and to enable consumers to distinguish among competing producers." *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1074 (C.D. Cal. 1998). "The purpose of a trademark is to designate the source of a product." *Id.* (quoting *Tech. Publ'g Co. v. Lebhar–Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir.1984)). "Consequently, the basic test for trademark infringement . . . is whether the use of the mark is likely to cause confusion as to the source of the goods or services." *Id.* (citing *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir.1997)). "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676–77 (9th Cir. 2005) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against *the sale of another's product as his*." [emphasis added])).

23

ORDER ON DEFAULT JUDGMENT - 10

1
2
3
4
5
6
7
8
9
10

Courts have recognized that "the tests for infringement of a federally registered mark . . . [and] infringement of a common law trademark . . . are the same." *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 764, 768 (C.D. Cal. 2015) (citing cases) (analyzing statutory and common law trademark infringement claims together because they are subject to the same requirements). To state a trademark infringement claim, a plaintiff must allege: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." *Dep't of Parks and Rec. for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

11
12
13
14
15
16
17
18
19
20

As for the second prong, a defendant's "use" of the mark must be "in connection with a sale of goods or services." *Bosley Med. Inst., Inc.*, 403 F.3d at 677. A defendant does not use a mark "in connection with a sale of goods or services" solely by registering a domain name that includes the plaintiff's mark—there must also be some indication of commercial activity. *Bosley Med. Inst., Inc.,* 403 F.3d at 679–80. This requirement is consistent with the purpose of federal trademark law, which is to prevent the defendant's use of the plaintiff's mark in a way that is "likely to cause confusion as to the source of the goods or services." *Films of Distinction, Inc.*, 12 F. Supp. 2d at 1074; *see also Bosley Med. Inst., Inc.*, 403 F.3d at 676–77.

21
22
23

The Ninth Circuit's decision in *Bosley Med. Inst., Inc., v. Kremer*, 403 F.3d 672 (9th Cir. 2005) is instructive. There, a dissatisfied customer of Bosley Medical Institute registered the domain name "www.BosleyMedical.com," so that he could

1

2

host a website that was, "to put it mildly, . . . uncomplimentary of the Bosley

Medical Institute." 403 F.3d at 674. The Ninth Circuit held:

3

4

5

6

7

8

> The dangers that the Lanham Act was designed to address are simply
> not at issue in this case. The Lanham Act, expressly enacted to be
> applied in commercial contexts, does not prohibit all unauthorized uses
> of a trademark. Kremer's use of the Bosley Medical mark simply cannot
> mislead consumers into buying a competing product—no customer will
> mistakenly purchase a hair replacement service from Kremer under the
> belief that the service is being offered by Bosley. Neither is Kremer
> capitalizing on the good will Bosley has created in its mark. Any harm
> to Bosley arises not from a competitor's sale of a similar product under
> Bosley's mark, but from Kremer's criticism of their services. Bosley
> cannot use the Lanham Act either as a shield from Kremer's criticism,
> or as a sword to shut Kremer up.

9

*Id.* at 679–80.

10

11

12

13

14

15

16

17

18

Neither the factual allegations in the complaint nor the rest of the record

establish the second prong of trademark infringement here. Plaintiffs fail to allege

that Host Master has used its mark "in connection with a sale of goods or services."

*See id.* at 678. Indeed, Plaintiffs seem to allege the opposite by stating that

Defendants have never used the mark THORNTAIL HARD AGAVE "in connection

with the offering or sale of any bona fide good or service." Dkt. No. 1 at 9. As

Plaintiffs have failed to plead a viable trademark infringement claim, the Court

finds that the second and third factors weigh heavily against entry of default

judgment on that claim.

19

20

21

22

23

Turning to Plaintiffs' ACPA claim, the Court struggles to even apply the

second and third *Eitel* factors here due to a lack of information from Plaintiffs. The

ACPA is an amendment to the Lanham Act that prohibits cybersquatting. *Bosley*

1    *Med. Inst., Inc.*, 403 F.3d at 680. Plaintiffs seem to allege that Defendants violated

2    Section 1125(d)(1), which provides:

3

4    (A) A person shall be liable in a civil action by the owner of a mark,
         including a personal name which is protected as a mark under this
         section, if, without regard to the goods or services of the parties, that
         person—

5

6        (i) has a bad faith intent to profit from that mark, including a
             personal name which is protected as a mark under this
             section; and

7

8        (ii) registers, traffics in, or uses a domain name that—

9            (I)     in the case of a mark that is distinctive at the time
                     of registration of the domain name, is identical or
                     confusingly similar to that mark;

10

11           (II)    in the case of a famous mark that is famous at the
                     time of registration of the domain name, is identical
                     or confusingly similar to or dilutive of that mark; or

12

13           (III)   is a trademark, word, or name protected by reason
                     of section 706 of Title 18 or section 220506 of Title
                     36.

14

15   15 U.S.C. § 1125(d)(1)(A). Plaintiffs have failed to articulate how their complaint

16   states a viable ACPA claim, and the claim is not obvious or clear from the face of the

17   complaint. Accordingly, the Court finds that the second and third *Eitel* factors counsel

18   against default judgment on this claim too.

19

20   **3.4    After considering the remaining *Eitel* factors, default judgment is
             still inappropriate.**

21          The Court turns to the remaining *Eitel* factors. As for the first factor,

22   Plaintiffs have alleged that without entry of default judgment, they will be unable

23   to gain control of "their trademark domain" to advertise their product. *See* Dkt. No.

ORDER ON DEFAULT JUDGMENT - 13

21 at 5–6. The Court finds that this factor weighs slightly in favor of default judgment. The fourth *Eitel* factor—which considers the sum of money at stake here—also favors default judgment, as Plaintiffs do not request money damages. The fifth *Eitel* factor supports default judgment as well; there is no chance that a dispute of material facts will arise because Host Master has failed to appear. As for the sixth factor, the Court finds no evidence showing that Host Master's failure to appear is due to excusable neglect, meaning this factor, too, supports default judgment.

The seventh *Eitel* factor considers the strong preference for deciding cases on their merits. *See Rosco*, 2019 WL 845419, at *3 (citing *Eitel*, 782 F.2d at 1471–72). The seventh *Eitel* factor weighs against default judgment here, especially given the Court's doubts about the sufficiency of Plaintiffs' complaint and the legal viability of their claims. *See Eitel*, 782 F.2d at 1472 (discussing court's "serious reservations about the merits" of the "substantive claim"). Thus, on balance, the Court finds that the *Eitel* factors do not support entry of default judgment.

## 4.   CONCLUSION

For the reasons above, Plaintiffs' Motion for Default Judgment, Dkt. No. 21, is DENIED with leave to renew. If Plaintiffs renew the motion, they should identify their legal theories and explain how their factual allegations are sufficient to state plausible claims under those theories such that they are entitled to default judgment.

Dated this 14th day of January, 2025.

Jamal N. Whitehead
United States District Judge