1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

THE AGAVE PROJECT LLC and
JOEL VANDERBRINK,

9

Plaintiffs,

10

v.

11

HOST MASTER 1337 SERVICES LLC
and DOE,

12

13

Defendants.

CASE NO. 2:23-cv-1984

ORDER DENYING DEFAULT
JUDGMENT

14

## 1. INTRODUCTION

15
16      Plaintiffs The Agave Project LLC and Joel VandenBrink[1] renew their motion

for default judgment against Defendant Host master 1337 Services LLC (Host

17      Master 1337). Dkt. No. 25. On January 14, 2025, the Court denied Plaintiffs' first

18      motion for default judgment with leave to renew. Dkt. No. 23. On July 14, Plaintiffs

19      renewed their motion for default judgment against Host Master 1337, limiting their

20      request to only their Anticybersquatting Consumer Protection Act (ACPA) claim.

21      15 U.S.C. § 1125(d)(1)(C). For the reasons below, the Court DENIES the motion.

22

23      _____
[1] The case filings call this Plaintiff both Joel VandenBrink and Joel Vanderbrink.

**ORDER** DENYING DEFAULT JUDGMENT - 1

## 2. BACKGROUND

For a more detailed discussion of the facts, *see* the Court's Order On Default Judgment. Dkt. No. 23. In short, Plaintiff Joel VandenBrink owns and operates an alcohol beverage company that does business as "Thorntail." Dkt. No. 1 at 2–3. Plaintiffs assert, "Thorntail has developed a hard cider fermented agave beverage and the related brand THORNTAIL HARD AGAVE." *Id*. at 3. VandenBrink maintains the website "drinkthorntail.com," which markets its Thorntail Hard Agave products. *Id*. at 4.

In 2023, Defendant Doe registered the domain name "thorntailhardagave.com" to post "inflammatory and false statements and images . . . to cause harm to Thorntail and VandenBrink by interfering with Plaintiffs' relationships in the alcoholic-beverage industry and harming Plaintiffs' reputation." *Id*. at 5. The complaint lists specific, harmful comments that were posted to the website. *See id*. at 5–6. While Plaintiffs never learned Doe's identity, they learned that Host Master 1337 registered the domain name. *See id*. at 6–7.

Plaintiffs filed this action on December 22, 2023, and the Clerk's office entered default against Host Master 1337 on January 13, 2025. Plaintiffs moved for default judgment against Host Master 1337, which the Court denied with leave to renew. Plaintiffs' renewed motion is now before the Court. Dkt. No. 25.

## 3. DISCUSSION

Before entering default judgment, the district court must ensure that it has subject-matter and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Similarly, district courts must also ensure that the defaulting defendant

1  received adequate service. *Liguore v. Simmons*, No. 24-CV-01621-LB, 2024, WL

2  4112332, at *4 (N.D. Cal. Sept. 5, 2024); *Rosco v. Advantage Grp.*, Case No: 2:15-

3  CV-325-RMP, 2019 WL 845419, at *2 (Feb. 20, 2019). In its order denying default

4  judgment, the Court found that service was proper and that it had subject-matter

5  jurisdiction over the case and personal jurisdiction over Host Master 1337. Dkt. No.

6  23 at 4–8. The Court incorporates those findings here.

7      Turning to the merits. Default judgment is a two-step process. *See* Fed. R.

8  Civ. P. 55 (a), (b). After the Clerk of the Court enters default against a party who

9  fails to respond, the court may exercise its discretion to order default judgment. *Id.*;

10  *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). On entry of default, the well-

11  pleaded allegations of the complaint are deemed true, except for those concerning

12  damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.

13  1987). District courts in the Ninth Circuit consider the seven *Eitel* factors to decide

14  whether default judgment is appropriate: "(1) the possibility of prejudice to the

15  plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the

16  complaint, (4) the sum of money at stake in the action; (5) the possibility of a

17  dispute concerning material facts; (6) whether the default was due to excusable

18  neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

19  favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.

20  1986).

21      Courts often find that the second and third *Eitel* factors are the most

22  important ones and consider them together. *United States v. Taylor*, No. CV-23-

23  00506-PHX-SMB, 2024 WL 4837021, at *2 (D. Ariz. Nov. 20, 2024) (quoting Fed.

**ORDER** DENYING DEFAULT JUDGMENT - 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

*Nat'l Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015)). Plaintiffs' renewed motion focuses on the second and third *Eitel* factors. Accordingly, the Court incorporates its previous findings on the first *Eitel* factor, as well as factors four through seven. Dkt. No. 23 at 13–15.

As for factors two and three, the Court still concludes that they weigh against entering default judgment because Plaintiffs have not stated a viable ACPA claim against Host Master 1337. "Cybersquatting is the Internet version of a land grab. Cybersquatters register well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002). To prove liability under the ACPA, the plaintiff must show that the cybersquatter:

    (i)     [has] a bad faith intent to profit from that mark; and

    (ii)    registers, traffics in, or uses a domain name that—

        (I)     in the case of mark that is distinctive . . ., is identical or confusingly similar to that mark that is distinctive.

        (II)    in the case of a famous mark . . ., is identical or confusingly similar to or dilutive of that mark.

*Id.* (quoting 15 U.S.C. § 1125(d)(1)(A)).

On the first element, determining "bad faith intent to profit" is a fact-dependent inquiry. *See DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1220 (9th Cir. 2010). The ACPA statute provides nine, nondispositive factors that may be considered when deciding whether an alleged cybersquatter has acted in bad faith. 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX). But "because use of these listed factors is

permissive, '[courts] need not . . . march through' them all in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319 (9th Cir. 2005) (quoting *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001)). Indeed, "[t]he factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Id.* at 319–20 (quoting *Lucas Nursery & Landscaping, Inc. v. Grosse,* 359 F.3d 806, 811 (6th Cir.2004)).

Plaintiffs contend that these factors support a finding of bad faith. Even if Host Master 1337 acted in bad faith, however, the statute expressly requires that the alleged cybersquatter have an "*intent to profit.*" 15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added). As the Ninth Circuit has clarified, the ACPA was "intended to stop the registration of multiple marks with the hope of selling them to the highest bidder, 'distinctive marks to defraud consumers' or 'to engage in counterfeiting activities,' and 'well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site . . . .'" *Lamparello*, 420 F.3d at 318 (quoting S. Rep. No. 106-140, 1999 WL 594571, at *5–6). "The Act was not intended to prevent 'noncommercial uses of a mark, such as for comment, criticism, parody, news reporting, etc.,' and thus they 'are beyond the scope' of the ACPA." *Id.* at 318–19 (quoting S. Rep. No. 106-140, 1999 WL 594571, at *9).

Plaintiffs concede that Host Master 1337 did not attempt to sell the domain name. Dkt. No. 25 at 8. Taking Plaintiffs' allegations as true, Host Master 1337 used the domain to criticize and defame Plaintiffs. While this conduct may be

**ORDER** DENYING DEFAULT JUDGMENT - 5

troubling, it is "beyond the scope of the ACPA," as a matter of law. *Lamparello*, 420 F.3d at 319 (citation modified); *see also id*. at 322 ("[T]he use of a mark in a domain name for a gripe site criticizing the markholder does not constitute cybersquatting."). Thus, Plaintiffs have not pled a viable ACPA claim, and the second and third *Eitel* factors weigh against default judgment in their favor.

## 4. CONCLUSION

On balance, the *Eitel* factors do not support entering default judgment against Host Master 1337 on Plaintiffs' ACPA claim, as requested. Accordingly, Plaintiffs' renewed motion for default judgment is DENIED. Dkt. No. 25. The Clerk of the Court is DIRECTED to CLOSE this case.

Dated this 27th day of August, 2025.

Jamal N. Whitehead
United States District Judge

ORDER DENYING DEFAULT JUDGMENT - 6